# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DERRICK FOSTER, | |
| Plaintiff, | CIVIL ACTION NO. 3:CV-14-1368 |
| v. | (JUDGE CAPUTO) |
| CHARLES MAIORANA, *et al.*, | (MAGISTRATE JUDGE CARLSON) |
| Defendants. | |

## MEMORANDUM

Presently before the Court is Magistrate Judge Carlson's Report and Recommendation ("R & R") (Doc. 6) recommending dismissal of Plaintiff Derrick Foster's Complaint (Doc. 1) and Motion for Injunction and Temporary Restraining Order (Doc. 2). Also before the Court are Foster's Objections to the R & R (Doc. 8) and his Motion for Appointment of Counsel (Doc. 9). Defendants have not filed anything in this action. Because Foster's claims regarding events in 2008-2010 are time-barred, his claims regarding events that occurred in McKean and Loretto, Pennsylvania are more appropriately brought in United States District Court for the Western District of Pennsylvania ("W.D. Pa."), and his claim against Defendant Fink for disposing of his personal property and failing to file an administrative remedy form for Foster does state a claim upon which relief can be granted, the R & R will be adopted in part and rejected in part. The claims against Defendants Parker, Fegley, McKee and Recktenwald will be dismissed, and claims against Defendants Maiorana, Griffiths, O'Donnell, Eckenrode, Entzel, and Meeks will be severed and transferred to the W.D. Pa. Because Plaintiff does not meet the standard for counsel to be appointed, his motion to appoint counsel will be denied without prejudice.

## I. Background

**A. Factual Background**

Plaintiff Foster's claims arise out of incidents that occurred while he was incarcerated at the Federal Correctional Institution in Allenwood, Pennsylvania (FCI-Allenwood), the Federal Correctional Institution in Loretto, Pennsylvania (FCI-Loretto), and the Federal Correctional Institution in McKean, Pennsylvania (FCI-McKean).

The facts, as stated in the complaint, are as follows:[1]

On or about August 5, 2008, while incarcerated at FCI-Allenwood, Plaintiff Foster filed an institutional grievance claiming that Acting Warden Jeffrey Raleigh made false statements in his Inmate Central File. (Doc. 1, 4.) Foster contends that in retaliation, on August 8, Raleigh made a request to increase Foster's security level to medium from low, which was accepted by Warden David Ebbert. (*Id.*) In August 2010, Plaintiff filed an action against FCI-Allenwood employees (*Foster v. Raleigh et al.*, terminated December 22, 2010). (*Id.*) He alleges that he was retaliated against and threatened in response. (*Id.*)

In July 2012, Defendant William Fink became Foster's unit counselor at FCI-Allenwood. (*Id.*) Shortly thereafter, Foster alleges that Counselor Fink "made a fraudulent representation" about Foster on an incident report. (*Id.*) He placed Foster in the Segregated Housing Unit ("SHU") and unsuccessfully tried to block Foster's transfer from FCI-Allenwood's medium-security division to a low-security facility, FCI-Loretto. (*Id.* at 5.)

Additionally, Foster contends that Fink did not turn in Foster's Federal Bureau of Prisons ("BOP") administrative remedy form BP-9 to the Warden. (*Id.*) On July 11, 2012, Foster contends that Fink threw away most of Foster's personal property, including legal papers he had helped draft for another inmate, Inmate Stephens, when Foster was transferred to FCI-Loretto as the result of the transfer that Fink had tried to block.

On August 3, 2012, Foster arrived at FCI-Loretto. (*Id.*) Foster alleges that Warden Maiorana and other employees would not assist him in sending the legal papers he had drafted before his transfer to Inmate Stephens, still at FCI-Allenwood. (*Id.*) Warden Maiorana denied Foster's request to put Stephens on his contact list, as prisoners generally

---

[1] To the extent that this statement of the facts differs from those in the R & R, I reject that portion of the R & R. In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

2

cannot correspond with each other. Foster alleges that he and Stephens fall under one of the exceptions, "witness in a legal action in which both inmates are involved." (*Id.*)

On November 30, 2012, Plaintiff was in a common area of FCI-Loretto when another inmate told him that Correctional Officer ("CO") Griffiths and another CO were in his room, "packing out" his belongings, including the legal papers for Inmate Stephens. (*Id.* at 6.) When he arrived at his room, the COs questioned him about the legal papers, and said he was not allowed to have them. (*Id.*) They brought him to meet with Lt. Cuomo, who told him that an incident report was being filed and he was being placed in the SHU for lying to staff, continuing his correspondence with Stephens, and asking Stephens for $1,500. (*Id.*) While Foster was in the SHU in December 2012, Warden Maiorana expressed that his "problem with" Foster was that he requested another inmate pay him $1,500. (*Id.* at 7.) Foster explained that he was not asking Stephens for the money, rather, he was asking the judge in Stephens' case to reimburse him that amount for his legal services. (*Id.*)

On December 4, 2012, Foster went before the Unit Disciplinary Committee in connection with this incident, and received sixty (60) days without phone or commissary access as a sanction. (*Id.*) On December 7, Unit Manager Entzel told Foster that his cellmate, inmate Greer, had "gotten smarter" since being in a cell with Foster, and so he (Entzel) was going to put Foster in for a transfer to a medium-security prison. (*Id.*)

On January 6, 2013, while in the SHU, Foster showed CO Griffiths correspondence from the judge in Inmate Stephen's case, which Foster asserts said that the legal papers taken from Foster should be returned. (*Id.* at 7-8.) After showing this to CO Griffiths, Griffiths placed a call to see if Foster could be removed from the SHU. (*Id.* at 8.) After this call, Griffiths informed Foster that he (Foster) was in the SHU not because of the legal papers, but because of his request for $1,500. (*Id.*) Griffiths told Foster that he could not be released from the SHU into the general population, as he had "pissed-off" his unit manager, who was putting him in for a transfer. (*Id.*) He told Foster that he would have to file an administrative remedy. (*Id.*) At some point between then and the filing of this complaint on July 17, 2014, Foster was transferred to FCI-McKean.

3

**B. Procedural Background**

Plaintiff filed his Complaint (Doc. 1) and Motion for Injunction and Temporary Restraining Order (Doc. 2) on July 10, 2014. He brings claims against twelve (12) prison officials at the three (3) prisons where he has been incarcerated (FCI-Allenwood, FCI-Loretto, and FCI-McKean) asking for relief pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

Plaintiff also filed a request for a temporary restraining order and preliminary injunction pursuant to Federal Rule of Civil Procedure 65(b) (Doc. 2), asking that Defendants Charles Maiorana, Charles Entzel, P. Griffiths, S. O'Donnell, Tony Eckenrode, Monica Recktenwald, William Fink, and Charles Samuels, Director of the Federal Bureau of Prisons, respond to an Order to Show Cause. (*Id.*) Foster asked that these defendants "cease and desist unjust acts" for "administration detention/segregation" and "administrative transfers/security issues," as well as "exoneration and vindicate inmate central files of false reports" and "civil action fees and association of costs lossed." (*Id.* at 1-2.)

On July 21, 2014, Magistrate Judge Carlson issued the R & R (Doc. 6), recommending that Plaintiff's motion to proceed *in forma pauperis* be granted, but that the complaint be dismissed for failure to state a claim upon which relief can be granted, pursuant to the screening requirement of the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e *et seq*, ("PLRA"). In the alternative, he recommended that the allegations against defendants located in the Western District of Pennsylvania be transferred there for that court's consideration. He further recommended that Plaintiff's motion for preliminary injunction be denied.

On August 11, 2014, Plaintiff Foster filed his Objections to the R & R (Doc. 8), and also filed a Motion to Appoint Counsel (Doc. 9), as well as a second Motion to Proceed *in forma pauperis* (Doc. 10).

## II. Legal Standard

Where objections to a magistrate judge's R & R are filed, the Court must conduct a *de novo* review of the contested portions. *Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C. § 636(b)(1)(c). This only applies to the extent that a party's objections are both timely and specific. *Goney v. Clark*, 749 F.2d 5, 6-7 (3d Cir. 1984). In conducting a *de novo* review, a court may accept, reject, or modify, in whole or in part, the factual findings or legal conclusions of the magistrate judge. *See* 28 U.S.C. § 636(b)(1); *Owens v. Beard*, 829 F. Supp. 736, 738 (M.D. Pa. 1993). Although the review is *de novo*, the law permits the court to rely on the recommendations of the magistrate judge to the extent it deems proper. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980); *Goney*, 749 F.2d at 7; *Ball v. United States Parole Comm'n*, 849 F. Supp. 328, 330 (M.D. Pa. 1994). Uncontested portions of the report may be reviewed at a standard determined by the district court. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985); *Goney*, 749 F.2d at 7. At the least, the court should review uncontested portions for clear error or manifest injustice. *See, e.g., Cruz v. Chater*, 990 F. Supp. 375, 376-77 (M.D. Pa. 1998).

## III. Discussion

On July 21, 2014, Magistrate Judge Carlson issued the R & R (Doc. 6). He recommended that Plaintiff be permitted to proceed *in forma pauperis,* but that the Complaint be dismissed for failure to state a claim upon which relief can be granted, and the Motion for Injunction and Temporary Restraining Order be denied. The magistrate judge found that some of Plaintiff's claims are time-barred, and some of them are more appropriately brought in United States District Court for the Western District of Pennsylvania ("W.D. Pa."). Magistrate Judge Carlson found that the "sole claim made against a defendant within the jurisdiction of this Court which does not appear to be time barred is Foster' [sic] allegations" against William Fink, a correctional officer, and recommended those claims be dismissed for failure to state a claim upon which relief can be granted. I will address each of these recommendations in turn.

5

**A. Claims that are Time-Barred**

I will adopt the magistrate judge's recommendation that some of Plaintiff's claims are time-barred by Pennsylvania's two-year statute of limitations for civil rights claims. Plaintiff Foster does not object to the determination that there is a two-year time limit; rather, he asserts that the alleged wrongs that occurred between 2008 and 2010 are ongoing. Foster outlines these events in paragraphs 17-19 of his Complaint. (Doc. 1, ¶¶ 17-19.) While paragraph 19 addresses events in 2010, paragraph 20 skips to events in 2012, and Foster fails to demonstrate a meaningful link between the two. (*Id.* at ¶ 20.) Plaintiff does not show in his Complaint (Doc. 1) or his Objection to the R & R (Doc. 8) that the alleged wrongs occurring from 2008-2010 are ongoing. They are not ongoing simply because Plaintiff alleges that he continued to experience mistreatment by other prison officials.

**B. Claims against Defendants Employed by Prisons in the U.S. District Court for the Western District of Pennsylvania, based on Events occurring in that District**

FCI-McKean and FCI-Loretto are located in the W.D. Pa. The magistrate judge recommended that the claims against employees of these prisons be dismissed, or in the alternative, transferred to the W.D. Pa. I reject the recommendation that the claims be dismissed and instead adopt the alternative recommendation that they be transferred. Plaintiff does not object that venue is proper in the W.D. Pa. for his claims against defendants employed at these prisons. (Doc. 8, 2.) Because Plaintiff does not object, I review this recommendation for plain error or manifest injustice, and adopt it. I review the decision to dismiss the claim *de novo.*

As the R & R notes, when a claim is brought in a district where it lacks venue, the Court may choose whether to dismiss the action for lack of venue pursuant to 28 U.S.C. § 1406 and Fed. R. Civ. P. 12(b)(3), or transfer it to the appropriate venue. This decision is guided by what is "in the interest of justice." 28 U.S.C. § 1406(a). I do not adopt the R & R's construction of this guiding principle. The interest of justice is best served in this case by transferring the prisoner's action to the proper venue, rather than dismissing it. The court

of the appropriate venue, the W.D. Pa., should determine the merits of Plaintiff's claims.

The R & R does not provide support for the recommendation that Plaintiff's claims be dismissed, rather than transferred–only that Plaintiff's filings are "the incomprehensible claims of an eccentric litigant." (Doc. 6, 23.) While Plaintiff's claims are not entirely clearly organized, they rise above the level of "incomprehensible," especially in light of the "less stringent standards" to which our court system holds *pro se* litigants. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This Court has long recognized the value–in the interest of justice–in allowing *pro se* litigants in a system that otherwise only permits registered attorneys to file legal documents. This Court has also recognized the administrative hurdles that indigent prisoners face in filing legal documents, and the need for prisoners to access the justice system. Thus, I will reject the recommendation that Plaintiff's claims against defendant employed at prisons in the W.D. Pa. (the "Western District Defendants")–Defendants Charles Maiorana, Griffiths, O'Donnell, Tony Eckenrode, Charles Entzel and Bobby L. Meeks–be dismissed, and instead adopt the alternative recommendation, that they be transferred to the proper venue, the W.D. Pa.

To facilitate transfer, these claims should be severed from Plaintiff's claims against Defendant Fink, pursuant to Fed. R. Civ. P. 21 ("Rule 21"): "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party." After severance under Rule 21, a "severed claim proceeds as a discrete suit and results in its own final judgment. . ." *Official Comm. of Unsecured Creditors v. Shapiro*, 190 F.R.D. 352, 354-55 (E.D. Pa. 2000) (quoting *Sidag Aktiengesellschaft v. Smoked Foods Prods. Co.*, 813 F.2d 81, 84 (5th Cir.1987)). As the court in *Shapiro* set out:

> Rule 21 is titled "Misjoinder and Non–Joinder of Parties." However, it may be used to organize problematical issues other than joinder problems. 4 Moore's Federal Practice § 21.02(1) . . . In addition, the Rule explicitly provides authority to sever parties *sua sponte* "on such terms as are just." Fed.R.Civ.P. 21; see *Stark v. Indep. Sch. Distr. No. 640*, 163 F.R.D. 557, 564 (D.Minn.1995) ("the underlying purpose of Rules 19, 20 and 21 is to allow the district court itself to exercise its power to align the parties and the issues presented in a single lawsuit in a way that will foster judicial efficiency . . ."). *Shapiro*, 190 F.R.D. at 355.

In this case, severing Plaintiff's claims against Defendant Fink from his claims against the Western District Defendants will foster judicial efficiency and promote justice. To determine whether to sever claims, "the court must balance considerations including the convenience of the parties, the avoidance of prejudice to either party, and 'promotion of the expeditious resolution of the litigation.'" *Cooper v. Metlife Auto & Home*, No. 13-687, WL 4010998, at *2 (W.D. Pa. Aug. 6, 2013) (citing *Shapiro,* 190 F.R.D. at 355 (internal quotation omitted)). It is most convenient and in the interest of expeditiously resolving this litigation to sever the claims, and will not prejudice any party. Plaintiff's claims against Fink stem from incidents occurring while he was incarcerated at FCI-Allenwood, while his claims against the Western District Defendants occurred at other prisons. Defendant Fink works in the Middle District of Pennsylvania, and presumably resides nearby. It would be inconvenient and not in the interest of justice to require him to litigate in the W.D. Pa., particularly because the claims against him are separate from the claims against the defendants properly in the W.D. Pa. It does not appear that it would prejudice any party to sever the claims. Thus, Plaintiff's claims against the Western District Defendants will be severed from his claims against Defendant Fink, and transferred to the W.D. Pa.

## C. Claims against Defendant Fink

Magistrate Judge Carlson determined that Foster's claims against Defendant Fink are neither time-barred nor brought in the improper venue. However, he dismissed those claims with prejudice for failure to state a claim upon which relief can be granted, pursuant to his duty to screen *pro se* motions filed against government officials, and duty to screen prisoner complaints pursuant to the PLRA, alongside his review of Plaintiff's Motion to Proceed *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B)(ii); PLRA, 42 U.S.C. § 1997e *et seq*.

### 1. Legal Standard

As Magistrate Judge Carlson notes, this language mirrors the language of Fed. R. Civ. P. 12(b)(6): a complaint should be dismissed for "failure to state a claim upon which relief can be granted." A complaint satisfies this requirement when it meets the Supreme

8

Court's "plausibility standard": when the factual pleadings 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). As the R & R noted: "a well-pleaded complaint must contain more than mere legal labels and conclusions. A complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a short and plain statement of a cause of action." (Doc. 6, 8.)

However, the R & R does not address a countervailing standard: that our courts hold *pro se* complaints to a "less stringent standard" than other complaints. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). While the PLRA was meant to screen out some complaints, it has not changed the fact that *pro se* litigants' complaints should be given more deference than professionally-crafted ones. This "less stringent standard" to which *pro se* litigants are held helps guide the analysis of whether Foster has stated a claim upon which relief can be granted. *Haines,* 404 U.S. at 520 (1972). This is true even given the deference courts give to prison officials in administering prisons. *Id.* Foster asserts three bases for his claim that Fink violated his constitutional rights: first, that Fink attempted to block his transfer to low security for retaliatory reasons, second, that Fink threw away his legal documents and other property, and third, that Fink failed to file Foster's BP-9 administrative remedy form with the prison warden, a prerequisite to a court action. I address each of these in turn.

### 2. Attempt to Block Plaintiff Foster's Transfer for Retaliatory Reasons

I will adopt the magistrate judge's finding that because Fink's alleged attempt to block Foster's transfer for retaliatory reasons did not succeed, Foster has not suffered any injury or civil rights violation, and so has failed to state a claim upon which relief can be granted.

### 3. Disposal of Plaintiff Foster's Property

I will adopt the magistrate judge's recommendation that to the extent Foster's motion can be construed as an access to the courts claim, because Defendant Fink took and threw out legal papers Foster prepared for another inmate, his complaint failed to state a claim upon which relief can be granted. Foster does not specifically object to this finding, so I

review it for clear error or manifest injustice. Foster is not a party in the litigation to which the discarded papers relate. Thus, he cannot assert an access to the courts claim.

I will reject the magistrate judge's recommendations with respect to Foster's due process claims caused by property loss. It is incorrect to find that if a plaintiff has exhausted administrative remedies, he has not been denied due process. Under the Prison Litigation Reform Act of 1995 ("PLRA"), a prisoner-plaintiff may only bring a suit in court under § 1983 if they have first attempted to exhaust administrative remedies. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006); 42 U.S.C. § 1997e *et seq*. To hold that by exhausting administrative remedies, a prisoner-plaintiff has shown that he did not suffer a due process violation would essentially make it impossible for any prisoner to successfully allege a due process violation in court, and incorrectly construes the requirements of showing a due process violation. Thus, I do not adopt the recommendation that Plaintiff has failed to state a due process claim because he wrote that he had exhausted administrative remedies.

From the face of his complaint, it appears that Foster plausibly states a claim upon which relief can be granted: by discarding Foster's personal property, without any evidence that it was for a legitimate prison security need, Defendant Fink may have violated Foster's due process rights. As Magistrate Judge Carlson writes, "the Due Process rights of prisoners may be accommodated to a prison's legitimate security needs." *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008). Based on Foster's complaint alone, there is no indication that his papers and other property were removed from him by Fink pursuant to a legitimate security need. Additionally, it is not clear what process was provided to him.

### 4. Failure to turn in a BOP Administrative Remedy Form BP-9

The R & R does not mention one of Plaintiff Foster's claims: that Defendant Fink did not turn in a BOP Administrative Remedy form BP-9 to Warden Recktenwald. While Foster alleges that this violated his First Amendment Right, it can also be construed as a violation of his rights to due process and to access the court. As discussed above, a prisoner is required to attempt to exhaust administrative remedies before filing a suit pursuant to § 1983. By refusing to turn in this form for the plaintiff, Defendant Fink may have denied him

access to the courts and may have interfered with his right to due process.

### 5. New Allegations in Foster's Objection to the R & R

In his Objection, Foster states allegations against Fink not in his complaint: that Fink used force against him, causing injury, and put Foster in the SHU for refusing to give up his bed to a white inmate, and said discriminatory things to Foster. (Doc. 8, 9.) Should Foster wish to assert these claims, he must include them in an amended complaint.

### D. Supervisory Liability

I will adopt the recommendation that Plaintiff's claims based on supervisory liability be dismissed. To be liable for a constitutional tort claim, a defendant must be personally and actively involved in the alleged conduct that resulted in a deprivation of a constitutional right. *Morse v. Lower Merion School Dist.*, 132 F.3d 902 (3d Cir. 1997); *see also Maine v.Thiboutot*, 448 U.S. 1 (1980). "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). Foster does not allege that Defendant Charles Samuels and other supervisory plaintiffs had personal direction or actual knowledge.

### E. Leave to Amend

I will reject the dismissal of Plaintiff's claims without leave to amend. A plaintiff whose complaint is dismissed for failure to state a claim upon which relief can be granted must be given leave to amend, unless it would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This remains true where a complaint is dismissed pursuant to the PLRA screening requirements, 28 U.S.C. § 1915(e)(2). *Id.* Plaintiff argued this and requested leave to amend in his Objection to the R & R. (Doc. 8.) Plaintiff should be granted leave to amend his complaint.

11

### F. Claim for Injunctive Relief

I will adopt Magistrate Judge Carlson's recommendation to deny Plaintiff's Request for Injunctive Relief (Doc. 2) because a prisoner's transfer to another prison moots any claim for injunctive relief. The Supreme Court has held that a preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). Even without addressing the requirements that a movant is required to show in order to be granted the extraordinary relief of a preliminary injunction and temporary restraining order, it is clear that it is not proper in this instant case.

Plaintiff is currently incarcerated in FCI-McKean. Plaintiff cannot succeed in his claims for injunctive relief against officials at FCI-Allenwood and FCI-Loretto, because as Magistrate Judge Carlson noted in his R & R, this Court has held that a prisoner-petitioner's "transfer to another institution moots any claim for injunctive or declaratory relief." *Fortes v. Harding*, 19 F.Supp.2d 323, 326 (M.D. Pa. 1998) (citing *Abdul-Akbar v. Watson*, 4 F.3d 195, 206-07 (3rd Cir. 1993); *Weaver v. Wilcox*, 650 F.2d 22, 27 (3rd Cir. 1981)).

### G. Motion for Appointment of Counsel

Plaintiff's Motion for Appointment of Counsel (Doc. 9), filed after the R & R was issued, will be denied without prejudice. A plaintiff in a civil case has no constitutional or statutory right to counsel. *Montgomery v. Pinchak*, 294 F.3d 492, 498 (3d Cir. 2002). The Court does not have the authority to compel a lawyer to represent an indigent plaintiff. *Tabron v. Grace*, 6 F.3d 147, 153 n. 1 (3d Cir. 1993). Rather, representation for an indigent person is governed by 28 U.S.C. § 1915(e)(1), which provides that the court "may request an attorney to represent any person unable to afford counsel," but the court cannot order the attorney to do so. The Third Circuit Court of Appeals has cautioned that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted. . ." *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1977).

A district court has broad discretion under 28 U.S.C. § 1915(e)(1) to decide to seek

counsel for a litigant, *Montgomery*, 294 F.3d at 498, and the decision can be made at any point in the litigation. *Id*. at 503–04. As a threshold matter, the Court must assess whether the claimant's case has some arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

Plaintiff has not met the required burden for appointment of counsel in a civil case. Plaintiff asserts that he needs counsel because this case has complex issues to litigate and a trial will likely involve conflicting testimony; however, at present, there is no indication that a trial, or further litigation, will take place. With respect to his claims properly filed in the Middle District of Pennsylvania, all claims except against one defendant have been dismissed. Plaintiff may file a Motion to Appoint Counsel again at a later stage if need be.

## IV. Conclusion

For the above reasons, the R & R will be adopted in part and rejected in part. Plaintiff's claims against Defendant Fink, alleging that Fink disposed of Plaintiff's property and failed to file an administrative remedy form BP-9 for Plaintiff, will be permitted to proceed. Plaintiff will be granted leave to amend his Complaint with respect to his other allegations. The Motion for Preliminary Injunction and Temporary Restraining Order will be denied. The Motion to Appoint Counsel will be denied without prejudice. An appropriate order follows.

November 21, 2014 /s/ A. Richard Caputo
Date                                                          A. Richard Caputo
United States District Judge